```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


BLAKE NASH HUSBAND OF/AND ANNE NASH          CIVIL ACTION

VERSUS                                       No. 06-1083

HARRY KELLEHER & COMPANY, INC., et al.       SECTION: I
```

ORDER AND REASONS

The matter before the Court is a motion to remand filed on behalf of plaintiffs, Blake Nash Husband of/and Anne Nash. For the following reasons, plaintiffs' motion to remand is **GRANTED.**

BACKGROUND

Plaintiffs, Blake and Anne Nash, own a residence located at 123 Carina Circle, Slidell, Louisiana. Plaintiffs obtained the necessary insurance for the construction of a home located on said property on or about June 18, 2004, from defendant, Steve Barnes, an employee/agent of Barnes Insurance Agency.[1] On or about December 4, 2004, following the construction of the home, plaintiffs requested that Barnes secure all of the necessary insurance to reflect that the plaintiffs were now occupying the home.[2] Harry Kelleher & Co., Inc. (Kelleher) wrote the policy coverage and Fidelity National Property and Casualty Insurance

---

[1] Rec. Doc. No. 1-1, p. 18.

[2] Rec. Doc. No. 1-1, p. 18.

1

Company (Fidelity) insured the policy.[3]  On August 29, 2005, following Hurricane Katrina, the first floor of plaintiffs' home and their garage were inundated with floodwater.[4]  Plaintiffs were later informed that their insurance policy only covered the structure of their home and that it did not include coverage for the contents of the home as they allegedly had requested.[5]

Plaintiffs originally filed this lawsuit against defendants in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, on November 9, 2005.[6]  Plaintiffs allege that defendants are liable for damages due to a breach of contract and/or violations of their fiduciary duty to plaintiffs and, in the alternative, through defendants' negligence in procuring the requested insurance.[7]  Plaintiffs allege that the negligence of Barnes, as an agent, is imputed to Barnes Insurance Agency, Inc., Kelleher, and Fidelity.[8]

Defendants filed their notice of removal on March 2, 2006, contending this Court has jurisdiction pursuant to 28 U.S.C. §

---

[3] Rec. Doc. No. 1-1, p.18.

[4] Rec. Doc. No. 1-1, p. 19.

[5] Rec. Doc. No. 1-1, p. 19.

[6] Rec. Doc. No. 1-1, p. 17.

[7] Rec. Doc. No. 1-1, pp. 17-18.

[8] Plaintiffs' First Supplemental and Amending Petition for Damages, p. 1.

1331 because a federal question exists.[9]  Plaintiffs then filed their motion for remand on June 29, 2006.[10]  Defendants filed a memorandum in opposition on August 29, 2006.[11]  Defendants contend that previous caselaw has misconstrued the law, that federal policy and procedures are at the heart of this case, and that federal funds would be implicated should plaintiffs prevail.

## LAW AND ANALYSIS

### I. Standards of Law

*A.  Motion to Remand*

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  The removal statute is strictly construed.  *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 U.S. Dist. LEXIS 12013, at *2 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)).  When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of proof.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921); *Sid Richardson*

---

[9] Rec. Doc. No. 1-1, pp. 1-3.

[10] Rec. Doc. No. 6-1.

[11] Rec. Doc. No. 13-1.

*Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden."). Doubts concerning removal are to be construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted). Moreover, plaintiffs are considered masters of their complaint, and the court will rely on the plaintiffs' facts and allegations submitted in their original petition and first supplemental and amending petition. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987).[12]

B.  *Federal Question Jurisdiction*

The original jurisdiction alleged by defendants is federal question jurisdiction--i.e., the case is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, "it is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *see also Caterpillar Inc.*, 482 U.S. at 392, 107 S. Ct. at 2429 (stating that subject matter jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly

---

[12] Plaintiffs "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392, 107 S. Ct. at 2429.

pleaded complaint").

## II. Discussion

Plaintiffs argue that the Court lacks subject matter jurisdiction over this action because their claims arise out of state law and are not preempted by federal law.  Plaintiffs contend that courts in this circuit recognize a distinction between those state law claims that concern the "handling" of a flood insurance policy, which are preempted, and those claims that relate to negligence in the procurement of such a policy, which are not preempted.  Plaintiffs assert that their claims fall within the latter category and, therefore, their claims are more appropriately before a state court.[13]

The National Flood Insurance Program (NFIP) was established by the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.*, and it is administered through the Federal Emergency Management Act ("FEMA"), *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005).  The NFIP has two main components:  1) the flood insurance program, and 2) a comprehensive national plan for flood management. *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434

---

[13] Rec. Doc. 6-2, pp. 3-5; The Supremacy Clause of the United States Constitution provides Congress with the power to preempt a state statute where it conflicts with federal law. U.S. Const. art. VI, cl. 2. The United States Supreme Court, however, has instructed that this preemption should only be effected where it is "the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947).  A state law may be preempted either by an express provision, by implication, or by a conflict between federal and state law. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 537, 121 S. Ct. 2404, 2412, 156 L. Ed. 2d 34 (2001)

F.3d 341, 342 (5th Cir. 2005). A standard flood insurance policy ("SFIP") can be issued by a private "Write-Your-Own" insurance provider ("WYO") directly to consumers. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). These WYO companies, however, have no power to alter, amend, or waive any provision contained within the SFIP. 44 C.F.R. pt. 61.13(d). By statute, these WYOs are considered fiscal agents of the United States. 42 U.S.C. § 4071(a)(1).

In *West v. Harris,* the Fifth Circuit denied a motion to remand a claim for attorney's fees pursuant to a flood insurance policy. 573 F.2d 873, 881 (5th Cir. 1978). The Court reasoned that the flood insurance program was a "child of Congress . . . and [because] the federal government participates extensively in the program . . . it is clear that the interest in uniformity of decision present in this case mandates the application of federal law." *Id.* The Fifth Circuit later concluded that federal preemption did not apply to a lawsuit against WYO insurers for tortious misrepresentation. *Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793, 796 (5th Cir. 1993). As a result of that decision, confusion developed as to when state law tort claims based on misrepresentation would be preempted. In *Wright v. Allstate Ins. Co.*, the Court clarified its earlier holdings, finding that a difference exists between "procuring" and "handling" insurance claims. 415 F.3d at 389 (holding that state law claims based on

the WYO's handling of the insurance claim are preempted by federal law).  While the Fifth Circuit has not definitively ruled on whether procurement claims are preempted by federal law, lower courts have repeatedly held that state law claims are not preempted in procurement cases.  *Jones v. State Farm Fire & Cas. Co.*, 2006 WL 2359777, at *2-4 (S.D. Miss. Aug. 15, 2006)(Senter, J); *Seruntine v. State Farm & Cas. Co.*, 2006 WL 2361641, at *2-5 (E.D. La. Aug. 7, 2006)(Vance, J); *Bramlett v. State Farm Fire & Cas. Co.*, 2006 WL 2243186, at *4-6 (S.D. Miss. Aug. 4, 2006)(Senter, J.); *Sullivan v. State Farm Cas. Co.*, 2006 WL 2119320, *3-4 (E.D. La. July 27, 2006)(Barbier, J); *Jeffrey v. Ins. Underwriters, LTD*, 2006 WL 1984591, at *1-2 (E.D. La. July 7, 2006)(McNamara, J.); *Cosse v. Matte*, 2006 WL 1968868, at *1-2 (E.D. La. July 7, 2006)(McNamara, J.); *Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 534-36 (E.D. La. 2006) (Fallon, J.).

Plaintiffs allege that defendants are liable for damages under state law theories of contract, and/or breach of fiduciary duty, and/or professional negligence.  Defendants argue that plaintiffs' claims raise a federal question both because Fidelity is a fiscal agent of the United States and because the claims arise out of disputes concerning the administration of an

7

existing NFIP policy.[14]

The federal courts premise their jurisdiction under the NFIA on the fact that policies and claims under the National Flood Insurance Program involve the spending of federal funds.  *Landry*, 428 F. Supp. 2d at 534.  Defendants allege that Fidelity is a federal fiscal intermediary under the terms of FEMA regulations and that federal funds are implicated in the present claim, thereby providing a basis for federal jurisdiction.  The Court rejects this view, which is based on a misunderstanding of the applicable federal regulations.

FEMA regulations for the NFIP provide that "loss payments" shall be payable from federal funds.  44 C.F.R. pt. 62, App. A., art. III(D)(2).  "Loss payments include payments as a result of litigation that arises under the scope of this Arrangement [between WYOs and the Government], and the Authorities set forth herein."  *Id.*  But, FEMA will review litigation costs for denial where they are "significantly outside the scope" of the Arrangement,[15] "and/or involve issues of agent negligence."  *Id.*

---

[14] Rec. Doc. No. 13-1, p.3.

[15] With respect to the definition of the term "Arrangement," Article I states in pertinent part:
> Whereas, the Congress in its "Finding and Declaration of Purpose" in the National Flood Insurance Act of 1968, as amended, ("the Act" or "Act") recognized the benefit of having the National Flood Insurance Program (the "Program" or "NFIP") "carried out to the maximum extent practicable by the private insurance industry"; and
>
> Whereas the Federal Insurance Administration (FIA) within the Mitigation Division recognizes this Arrangement as coming under

at art. III(D)(3).  Moreover, FEMA regulations expressly state that, in the event of negligence that does not result in litigation, FEMA will not reimburse WYOs for agent negligence. *Id.* at art. IX.  While Article IX's prohibition does not directly apply in this litigated case, when read in conjunction with Article III, the regulations express that the clear policy of FEMA is not to reimburse WYOs for costs arising from agent negligence.[16]

Therefore, this Court concurs with the holding of *Landry* and other cited cases that only claims for the actual handling of NFIP policies, as opposed to claims of negligence in their procurement, present federal questions.  *Landry,* 428 F. Supp. 2d at 535.[17]  The 2004 Amendments to Article I of the FEMA regulations do not alter this distinction.[18]

---

the provisions of Section 1345 of the Act (42 U.S.C. 4081); 44 C.F.R. pt. 62, App. A., art. I.

[16]Therefore, the defendants' assertions regarding agency relationships are irrelevant.  *See* Rec. Doc. No. 13-1, pp. 14-19.  Since the Court has found that federal funds will not be placed in jeopardy by an insurance agent's negligence in procurement of a flood insurance policy, it is of no consequence whether the WYO is ultimately held responsible for this negligence.

[17]This Court notes that the *Landry* decision directly cites Article IX without acknowledging that Article IX only applies to claims that are not the subject of litigation.  *Landry,* 428 F. Supp. 2d at 534-35.  However, for the reasons stated above, this Court still finds the underlying logic and ultimate holding of *Landry* to be persuasive.

[18]Article I as amended states that "any litigation resulting from, related to, or arising from the Company's compliance" with FEMA and FIA standards "and legal issues thereunder raise a federal question."  44 C.F.R. pt. 62, App. A., art. I.  Plaintiffs here make no allegation as to defendants' compliance with FEMA and FIA rules; they instead bring state law claims based on their agents' alleged failure to procure proper coverage.

The parties also dispute whether the plaintiffs' claims present a cause of action for policy handling or procurement. Defendants assert that federal funds are implicated in this case because plaintiffs already had flood insurance, therefore, defendant, acting as the federal fiscal intermediary, was "handling" the insurance policy.[19]  However, defendants misinterpret the distinction between "handling" and "procuring."

Handling entails the management of existing coverage which federal law and FEMA heavily regulate.  *Landry*, 428 F. Supp. 2d at 535; *Houck* 194 F. Supp. 2d at 464.  By contrast, "the rules and regulations reflect no interest in uniformity of standards of policy procurement outside of the Arrangement's scope." *Houck* 194 F. Supp. 2d at 464.  *Landry* was concerned with circumstances similar to the present case.  In that case, plaintiffs allegedly requested the best coverage available, but the defendants, State Farm and its agent, did not obtain insurance coverage for the contents of the home.  *Id.* at 532.  *Landry* held that plaintiffs' claims for failure to provide contents coverage involved policy procurement, and, therefore, the claim did not invoke federal question jurisdiction.  *Id.* at 534.

In this case, while plaintiffs had coverage for the structure of their home, plaintiffs learned in September 2005

---

[19] Rec. Doc. No. 13-1, p. 6-7.

10

that they did not have flood insurance coverage for the contents of their home, despite their alleged request that Barnes secure such coverage.[20]  Plaintiffs' claims center on their agents' failure to procure a contents flood insurance policy and allegations that this failure constitutes a breach of fiduciary duty or negligence.  Therefore, plaintiffs' claims arise outside of the policy handling context for which federal question jurisdiction exists.[21]

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that the motion to remand filed on behalf of plaintiffs[22] is **GRANTED** and the case is **REMANDED** to the 22nd Judicial District Court for the Parish of St. Tammany for lack of subject matter jurisdiction.

New Orleans, Louisiana, September __13th__, 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[20] Rec. Doc. No. 1-1, p. 19.

[21] Defendants also contend that this is a handling case because four recent cases have demonstrated that procuring is narrowly tailored.  Rec. Doc. No. 13-1, pp. 20-23.  However, the Court finds inapposite the facts of those cases.

[22] Rec. Doc. No. 6-1.

11